**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**MARTIN ALBERTO GUERRA,**

**Defendant.**

**Case No. 6:25-cr-10079-JMK**

## MEMORANDUM AND ORDER

Defendant Martin Alberto Guerra was indicted in August 2025 for violation of 21 U.S.C. § 841(a)(1) after law enforcement located methamphetamine in the trunk of a vehicle that he had been operating. Guerra filed a Motion to Suppress asserting that the government unlawfully searched the vehicle when it allowed a drug-sniffing canine to make physical contact with the vehicle and to physically invade the interior of the vehicle with its snout. Doc. 29. The Court held a hearing on the motion on August 19, 2026. Because Guerra lacked a reasonable expectation of privacy in the vehicle, the Court denies the motion.

## I. BACKGROUND

On November 28, 2024, Kansas Highway Patrol Trooper Cody Parr stopped Martin Alberto Guerra as he was traveling along US-54 highway in Seward County in a black Volvo. Trooper Parr stopped the vehicle for a registration violation under K.S.A. 8-142 after he ran the Volvo's tag and discovered that the registration was expired. Parr told Guerra he pulled him over because the registration information on the vehicle showed that it expired in March, but Guerra had a 2025 registration sticker on the tag. Guerra told Parr that he had recently purchased the Volvo.

Parr instructed Guerra to exit the Volvo and join him in his patrol vehicle so they could discuss the Volvo and the situation. While walking to the patrol car, Parr asked if Guerra had recently purchased the car and Guerra stated that it was gifted to him and that he had picked it up in Arizona. In the patrol vehicle, Parr asked Guerra about being gifted the Volvo and Guerra explained that a friend gifted him the car to help him out. Parr asked Guerra if the friend who gifted Guerra the car gave him a title and Guerra told Parr that the friend did not want to give him the title, but gave him some paperwork to take to the DMV.

Guerra provided Parr with a number of documents, including a signed application for replacement or transfer of title that provided the name and address of the Volvo's last registered owner, Paul Carpenter, and was dated November 14, 2024. The application stated that Paul Carpenter released his interest in the vehicle. Guerra also provided Parr with vehicle/vessel transfer and reassignment forms, which provided that the Volvo was "sold through Kardona Auto Auction #98512" and transferred from Advanced Remarketing Services to Skeeters Sports & Imports on November 19, 2024. The transfer and reassignment forms also showed that Skeeters Sports/Imports transferred the Volvo to Automotriz Tres Generaciones on the same date.

Parr questioned Guerra about the vehicle's last registered owner, Paul Carpenter. Parr asked Guerra if Carpenter was someone he had known for a while. Guerra explained that Carpenter gifted the Volvo to Guerra's cousin, who in turn gifted it to Guerra. Guerra also explained that his cousin, a truck driver, drove Guerra to Arizona to pick up the car from Carpenter. After Parr asked why Carpenter would give Guerra's cousin a free car, Guerra stated that he did not know "what deal" Carpenter and his cousin had regarding the car, but that Carpenter probably gave the car away because it was old and needed work and because Carpenter and his cousin used to work

together. Parr then asked Guerra when he traveled to pick up the Volvo and Guerra reported that he had picked it up the day before.

After running checks in his in-car computer, Parr determined that Guerra was on probation for drug offenses. Parr then expressed his suspicion that the car contained drugs, asked Guerra whether the Volvo contained drugs, and asked Guerra for consent to search the vehicle. Guerra told Parr that the car was "basically not mine yet," repeated that the car was gifted to him, and denied consent for a search of the vehicle. Parr then asked Guerra if he would consent to a free-air sniff around the vehicle by a canine. Guerra denied consent and Parr told Guerra that he was being detained.

Parr then called Meade County Sheriff's Deputy Dylan Wondra and his trained, drug-detecting dog, Zero, to the scene to conduct a free-air sniff of the Volvo. During Zero's first pass around the vehicle, Zero jumped onto the driver's front door and stuck his nose into the driver's open window. Zero then continued around the Volvo, with his nose and body making physical contact with the vehicle multiple times during the pass. Zero then sat in front of the Volvo's front grille, which Wondra testified showed a trained, positive indication to the odor of illegal narcotics.

Wondra further testified that after the positive indication, Zero moved out of position before being instructed by Wondra to do so. Wondra testified that he decided to have Zero do a second pass around the vehicle—a training pass—to remind Zero not to move until called off by Wondra. During the second pass of the vehicle, Zero jumped onto the vehicle and stuck his nose through the open passenger window, with his paws on the front passenger side of the Volvo. Zero again continued around the vehicle with his nose and body making incidental contact with the vehicle as he completed his pass. Zero again sat in front of the Volvo's front grille, which Wondra testified showed a trained, positive indication to the odor of illegal narcotics.

After the positive alert, Parr conducted a search of the vehicle and located approximately 18 pounds of methamphetamine in a duffel bag in the trunk. Guerra now argues that the government unlawfully searched the vehicle when it allowed Zero to make physical contact with the Volvo and to physically invade the interior of the Volvo with his snout.

## II. LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also United States v. Ostertag*, --- F.4th ----, 2026 WL 2636379, at *2 (10th Cir. Sept. 8, 2026) (noting that the Fourth Amendment extends to state action through the Fourteenth Amendment). "[A] search occurs when the government intrudes into a 'private sphere' over which an individual exhibits an expectation of privacy, if that expectation is one that society is prepared to recognize as reasonable." *Id.* at *3. Warrantless searches are "*per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "Generally, evidence obtained in violation of the Fourth Amendment cannot be used at trial." *Ostertag*, 2026 WL 2636379, at *2.

## III. ANALYSIS

### A. Parr's initial stop of the vehicle was justified.

Guerra first argues that the government bears the burden of demonstrating that the stop of the vehicle was justified by probable cause. Traffic stops are seizures for Fourth Amendment purposes. *United States v. Pettit*, 785 F.3d 1374, 1379 (10th Cir. 2015). But a warrantless stop is valid where the officer has reasonable suspicion to believe that a traffic violation occurred. *Kansas v. Glover*, 589 U.S. 376, 380 (2020). Although Guerra asserts that probable cause is the appropriate standard to justify a traffic stop, he recognizes that this position is at odds with Tenth Circuit

precedent. Doc. 29 at 6; *see also United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001) (rejecting proposition that an officer must have probable cause before initiating a traffic stop).

Regardless, Kansas law prohibits drivers from operating vehicles that are not registered and Parr observed Guerra operating the Volvo with an expired tag before he initiated the stop. K.S.A. 8-142. Guerra's registration violation gave Parr reasonable suspicion and objective probable cause to stop Guerra's vehicle.

**B. Guerra did not have an objectively reasonable expectation of privacy in the vehicle.**

Guerra next argues that the government unlawfully searched the Volvo when it allowed a drug-sniffing canine to make physical contact with the Volvo and to physically invade the interior with its snout. In response, the government first argues that Guerra lacks standing to challenge the search because he did not have a reasonable expectation of privacy in the vehicle. To determine whether Fourth Amendment standing exists, courts must "inquire whether the defendant has established (1) a subjective expectation of privacy in the property searched, and (2) that society would recognize that expectation of privacy as objectively reasonable." *United States v. Guzman*, 149 F.4th 1132, 1139–40 (10th Cir. 2025) (quoting *United States v. Marchant*, 55 F.3d 509, 513 (10th Cir. 1995)).

"Where the proponent of a motion to suppress is the car's driver but not the registered owner, mere possession of the car and its keys does not suffice to establish a legitimate possessory interest." *United States v. Valdez Hocker*, 333 F.3d 1206, 1209 (10th Cir. 2003). Rather, the defendant bears the burden to show that "he gained possession from the owner or someone with authority to grant possession." *Id.* (quoting *United States v. Arango*, 912 F.2d 441, 445 (10th Cir. 1990)). The court considers several nondeterminative factors: "(1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his

expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle." *Id.* (quoting *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000)). "Because the focus of the inquiry is on reasonable expectations, however, a defendant need not submit legal documentation showing a chain of lawful custody from the registered owner to himself." *Id.*

None of the three factors favor Guerra. Guerra did not present evidence that he asserted ownership over the items seized from the vehicle, Guerra did not testify to his expectation of privacy at the suppression hearing, and Guerra did not present testimony or evidence to show that he had a legitimate possessory interest in the vehicle. Instead, Guerra argues that he demonstrated his standing by (1) his sole physical possession of the Volvo at the time of the stop, (2) his statement to Parr that the Volvo had been gifted to him by his cousin, who had been gifted the car by the last registered owner, (3) his personal effects being in the Volvo at the time of the stop; (4) his and Parr's actions indicating that they had a subjective belief that Guerra had the power and authority to exclude; and (5) the argument that there is no evidence the Volvo was stolen. But these arguments overlook Guerra's inconsistent statements regarding how he came into possession of the vehicle.

During the stop, Guerra initially told Parr that he had purchased the Volvo. But, only one minute later, Guerra told Parr that the car had been "gifted" to him by a friend he had known for a while. Guerra told Parr that the friend had gifted him the Volvo to help him out, but that the friend did not want to give him the title. Minutes later, Guerra stated for the first time that Guerra's cousin gifted Guerra the car and that the car had been gifted to Guerra's cousin by the car's last registered owner, Paul Carpenter. Guerra stated that he did not know "what deal" Carpenter and his cousin had regarding the car, but that Carpenter probably gave the car away because it was old and needed

work and because Carpenter and his cousin used to work together. When Parr later asked for consent to search the vehicle, Guerra denied consent and stated that the car was "basically not mine yet."

Guerra argues that his "somewhat convoluted explanation" and "lack of pristine record-keeping" are not implausible considering that the Volvo was a 20-year-old vehicle in poor condition. But setting aside Guerra's conflicting statements, Guerra's account was also inconsistent with the paperwork he provided to Parr. Guerra ultimately told Parr that he and his cousin had picked up the Volvo from Carpenter the day before—November 27, 2024—and that Carpenter had gifted the car to Guerra's cousin. But Guerra's paperwork indicated that Carpenter had signed transfer of title paperwork for the Volvo on November 14, 2024, and that the car was subsequently transferred through three different entities over the following days, including by sale. Guerra did not connect these entities to Carpenter, his cousin, or himself in his conversation with Parr, nor did he do so in the suppression hearing. And so, none of Guerra's three, wholly different explanations of how he came into possession of the vehicle are consistent with the signed transfer forms contained in the record.

Citing *United States v. Rubio-Rivera*, Guerra asserts that his inconsistent statements are not sufficient to deprive him of standing to challenge the search of the Volvo. 917 F.2d 1271, 1275 (10th Cir. 1990). But the defendant in *Rubio-Rivera* testified at a suppression hearing that the owner of the car loaned him the vehicle after showing him papers in the glove box indicating ownership. *Id.* In concluding that the defendant's testimony was sufficient to establish standing, the Tenth Circuit distinguished Rubio-Rivera's case from other cases in which defendants "failed to introduce any evidence . . . which might establish a legitimate expectation of privacy in the particular area searched." *Id.* (citing *United States v. Erwin*, 875 F.2d 268, 271 (10th Cir. 1989)

(concluding that a defendant lacked standing where he did not testify at the suppression hearing or introduce any evidence to show legitimate ownership or possession of the automobile) and *Arango*, 912 F.2d at 446 n.2 (concluding that a defendant lacked standing where he conceded that he had obtained a truck from a third party but introduced no evidence to show how the third party had gained lawful possession of the truck from the registered owners)). Unlike the defendant in *Rubio-Rivera*, and like the defendants in *Erwin* and *Arango*, Guerra has not presented any testimony to support his explanation of how the vehicle came into his possession. Although he certainly asserts that his explanation to Parr is sufficient evidence of lawful possession, Guerra's unsworn, inconsistent statements simply do not show that he gained possession from someone with authority to grant it. Especially where Guerra bears the burden of establishing standing. *Guzman*, 149 F.4th at 1139.

Guerra also cites *Valdez Hocker* and *United States v. Taylor* for the proposition that a defendant's failure to present corroborating evidence of lawful possession does not foreclose standing but, again, the defendants in *Valdez Hocker* and *Taylor* testified about how they came into possession of the vehicles and their beliefs regarding ownership. *Valdez Hocker*, 333 F.3d at 1208; *United States v. Taylor*, 2022 WL 17987101, at *7 (D. Kan. Dec. 29, 2022). Guerra has not provided similar testimony and, in his conversation with Parr, alternated between stating that he had purchased the car, that the car had been given to him by a friend, that the car had been gifted to his cousin by the previously registered owner, and that the car was "basically not [his] yet."

The record also shows that the vehicle had not been registered for over a year and a half at the time of the stop, had a fake 2025 registration decal, and had been transferred to an entity to which Guerra has not asserted he has any connection one week before he came into possession of the vehicle. With these facts, Guerra cannot meet his burden of showing that he gained possession

of the vehicle from the owner or someone with authority to grant possession. As such, Guerra has not shown that his expectation of privacy in the Volvo was objectively reasonable.

## IV. CONCLUSION

Because Guerra lacks standing to challenge the search of the Volvo, his Motion to Suppress is denied. And because Guerra lacks standing to challenge the search, the Court does not reach the issue of whether Zero's physical contact with and physical entrance into the vehicle constituted a warrantless search of the vehicle.

THE COURT THEREFORE ORDERS that Guerra's Motion to Suppress (Doc. 29) is DENIED.

IT IS SO ORDERED.

Dated: October 20, 2026

s/ Jeffrey M. Kuhlman
JEFFREY M. KUHLMAN
UNITED STATES DISTRICT JUDGE